UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

ASHLEY DIXON,

        Plaintiff,

    v.

CITY OF ATLANTA, OFFICER
LEANDER DELICIEUX, OFFICER
MATTHEW ABAD,

        Defendants.

CIVIL ACTION NO.

1:22-CV-2209-SEG

## O R D E R

This matter is before the Court on Defendant Officer Matthew Abad's motion for judgment on the pleadings (Doc. 76), and Plaintiff Ashley Dixon's motion for default judgment against Defendant Officer Leander Delicieux (Doc. 80.)[1] After careful consideration, the Court enters the following order.

---

[1] The Court will address Defendant City of Atlanta's motion to dismiss Plaintiff's third amended complaint (Doc. 77) in a separate order.

# I.    Background

This is a civil rights case—brought pursuant to 42 U.S.C. § 1983—stemming from Plaintiff's arrest at a protest on June 2, 2020.

## A. Factual Background[2]

Following the murder of George Floyd in May 2020, protests against police violence and racial discrimination erupted throughout the country. (Third Am. Compl., Doc. 70 ¶ 9.)  Atlanta was no exception, and on Friday, May 29, 2020, over one thousand demonstrators gathered in the city.  (*Id.* ¶ 8.)  Erika Shields, Atlanta's police chief, was in attendance and addressed the crowd, expressing that she shared demonstrators' concerns and stating, in response to a demonstrator's question, that she and her officers were not "looking to use tear gas" on protestors.  (*Id.* ¶¶ 10-12.)

In response to civil unrest that occurred later that night, including acts of vandalism and looting, Atlanta's mayor, joined by Chief Shields, announced a curfew to go into effect on May 30, 2020.  (*Id.* ¶¶ 13-14.)  Mayor Keisha Lance Bottoms, by executive order, declared a state of emergency within Atlanta and

---

[2] These facts are derived from Plaintiff's third amended complaint.  (Doc. 70.) For purposes of resolving the pending motion for judgment on the pleadings, the Court accepts the well-pled allegations as true and construes them in the light most favorable to Plaintiff.  *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1321-22 (11th Cir. 2012).

ordered the curfew to begin at 9 PM and end at sunrise. (*Id.* ¶ 21.) The curfew lasted for about a week. (*Id.* ¶¶ 23, 86.)

On June 2, 2020, Plaintiff Ashley Dixon travelled downtown to attend a peaceful protest against police brutality and George Floyd's murder. (*Id.* ¶¶ 24-26.) During the demonstration, Ms. Dixon and other protestors marched to the intersection of Marietta Street and Centennial Olympic Parkway where hundreds of riot police were stationed. (*Id.* ¶¶ 25, 27.) Before 9 PM—when the curfew order was to go into effect—riot police declared the protest unlawful and announced that a curfew had been imposed. (*Id.* ¶ 30-31.) Officers began charging forward towards Ms. Dixon and her fellow protestors. (*Id.* ¶¶ 29-31.) Ms. Dixon alleges that she and others tried to disperse, but all apparent exit routes were blocked by officers organizing themselves into police cordons. (*Id.* ¶¶ 28, 32-34.)

Again before 9PM, Ms. Dixon claims, the riot police fired tear gas at the demonstrators, which caused Ms. Dixon significant pain and disoriented her. (*Id.* ¶¶ 35-37, 45.) According to Ms. Dixon, she attempted to run from the tear gas but was blocked by police cordons a block away. (*Id.* ¶¶ 46-47.) Along with fellow protestors, she then tried to leave the area through a construction site. (*Id.* ¶¶ 48-49.) Ms. Dixon alleges that Officer Delicieux followed the group into the construction site, unholstered his firearm, and pointed it at Ms. Dixon and others. (*Id.* ¶¶ 50-51.) The demonstrators allegedly complied with Officer

Delicieux's directions, and he led them out of the construction site at gunpoint. (*Id.* ¶¶ 52-54.)  Upon exiting the construction site, Ms. Dixon was exposed to tear gas again and arrested by Defendant Officers Delicieux and Abad.  (*Id.* ¶¶ 56-57.)

After her arrest, police marched Ms. Dixon to a makeshift detention center and placed her in a police van for roughly an hour.  (*Id.* ¶¶ 60-61.)  Ms. Dixon was later taken to the Atlanta Detention Center and held overnight for 15 hours.  (*Id.* ¶¶ 62-63.)  She was released the next day and cited for violating the City's curfew order.  (*Id.* ¶¶ 62, 64.)  No other charges were brought against her.  (*Id.* ¶¶ 65-67.)  While the curfew charge was eventually dropped months later, for "evidentiary reasons," Ms. Dixon asserts that she has suffered persistent physical, emotional, and psychological harm because of the incident. (*Id.* ¶¶ 68-85.)

## B. Procedural Background

Plaintiff Dixon filed this suit on June 2, 2022, against two John Doe Atlanta Police officers, Atlanta Police Chief Erika Shields, and the City of Atlanta (the "City").  (Doc. 1.)  On January 4, 2023, Plaintiff moved to amend the complaint to, *inter alia*, name the John Doe Officers as Officers Leander "Deslicieux" and Matthew Abad.  (Doc. 25.)  The Court granted Plaintiff's motion, which was unopposed.  (Doc. 29, 30.)  On October 17, 2023, Plaintiff again moved to amend the complaint to, *inter alia*, correct the spelling of

Officer Delicieux's name.  (Doc. 54.)  Again, Plaintiff's motion was unopposed and the Court docketed Plaintiff's second amended complaint.  (Doc. 57, 58.)

Plaintiff's second amended complaint asserted three causes of action: (1) excessive force against all Defendants except Officer Abad; (2) false arrest, retaliatory arrest, and selective enforcement against all Defendants; and (3) a facial and as-applied First Amendment challenge to the City's curfew order against all Defendants.  (Doc. 58 ¶¶ 106-42.)  The City and Police Chief Shields moved to dismiss all of Plaintiff's claims asserted against them. (Doc. 60.)  Plaintiff also filed a motion for default judgment against Officer Delicieux. (Doc. 65.)  The Court granted the City and Police Chief Shields' motion, dismissing with prejudice Plaintiff's First Amendment challenge to the curfew, but dismissing without prejudice the remaining claims.  (Doc. 67.)  In addition, the Court denied without prejudice Plaintiff's motion for default judgment as to Officer Delicieux for failing to satisfy certain procedural requirements.  (*Id.*)

Plaintiff has now filed a third amended complaint.  (Doc. 70.)  The third amended complaint asserts two causes of action: (1) excessive force against Officer Delicieux and the City; and (2) false arrest and retaliatory arrest against Officer Delicieux, Officer Abad and the City.  (*Id.* ¶¶ 148-64.)  The third amended complaint did not name Chief Shields in the case caption, and the parties have stipulated to the dismissal of Shields as a defendant.  (Doc. 83.)  Officer Abad has moved for judgment on the pleadings.  (Doc. 76.)  Plaintiff

opposes the motion.  In addition, Plaintiff has moved for default judgment against Officer Delicieux.  (Doc. 80.)

## II.  Legal Standards

### A. Motion for Judgment on the Pleadings

After the pleadings are closed, a party may move for judgment on the pleadings.  Fed. R. Civ. P. 12(c).  Under Federal Rule of Civil Procedure 12(c), judgment on the pleadings "is appropriate when there are no material facts in dispute, and judgment may be rendered by considering the substance of the pleadings and any judicially noticed facts."  *Horsely v. Rivera*, 292 F.3d 695, 700 (11th Cir. 2002).  "A motion for judgment on the pleadings is governed by the same standard as a motion to dismiss under Rule 12(b)(6)."  *Carbone v. Cable News Network, Inc.*, 910 F.3d 1345, 1350 (11th Cir. 2018).  In determining whether judgment on the pleadings is appropriate, the court shall "accept as true all material facts alleged in the non-moving party's pleading" and view them "in the light most favorable to the non-moving party."  *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1335 (11th Cir. 2014); *Hawthorne v. Mac Adjustment, Inc.,* 140 F.3d 1367, 1370 (11th Cir. 1998).

### B. Motion for Default Judgment

"While a defaulted defendant is deemed to admit the plaintiff's well-pleaded allegations of fact, he is not held to admit facts that are not well-pleaded or to admit conclusions of law."  *Surtain v. Hamlin Terrace Found.*,

789 F.3d 1239, 1245 (11th Cir. 2015) (internal quotations omitted).
Accordingly, "a default is not treated as an absolute confession by the
defendant of his liability and of the plaintiff's right to recover." *Nishimatsu
Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975). Instead,
a court must find that the complaint establishes a sufficient legal basis for the
entry of a default judgment. *See id.*; *Frazier v. Absolute Collection Serv., Inc.*,
767 F. Supp. 2d 1354, 1362 (N.D. Ga. 2011). Before granting default judgment,
the Court must be satisfied that Plaintiff has stated a valid claim supported by
the well-pleaded allegations sufficient to meet the elements of that claim. *See
Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1370 n.41 (11th Cir. 1997)
("[A] default judgment cannot stand on a complaint that fails to state a claim."
(citing *Nishimatsu Constr.*, 515 F.2d at 1206)).

## III.    Consideration of Body Camera Footage

Before addressing the merits of the parties' respective motions, a
preliminary matter must be discussed. In support of his motion for judgment
on the pleadings, Officer Abad cites body camera footage from the protest that
he attached to his answer to Plaintiff's third amended complaint. (*See* Doc.
75.) Officer Abad has also filed a certificate signed by a records custodian
attesting to the authenticity of the body camera footage. (Doc. 88-1.) Officer
Abad relies upon the footage—taken from his body camera and that of Officer
Delicieux—to argue that he never arrested Ms. Dixon, and that Ms. Dixon was

arrested after 9:00 PM when the City's curfew order was in effect. (Doc. 76 at 3-4.)

When considering a motion to dismiss or motion for judgment on the pleadings, the Court's review is generally limited to the four corners of the complaint and any attachments thereto. *See Baker v. City of Madison, Alabama*, 67 F.4th 1268, 1276 (11th Cir. 2023). However, there is an exception—the incorporation-by-reference doctrine. "[A] court may properly consider a document not referred to or attached to a complaint under the incorporation-by-reference doctrine if the document is (1) central to the plaintiff's claims; and (2) undisputed, meaning that its authenticity is not challenged." *Johnson v. City of Atlanta*, 107 F.4th 1292, 1300 (11th Cir. 2024).

As Ms. Dixon concedes, the requirements of the incorporation-by-reference doctrine are satisfied here. (*See* Doc. 78 at 3 ("At the current time, Plaintiff concedes that the body camera footage is central to Plaintiff's claims against Defendant Abad [and] does not challenge the authenticity of the body camera footage[.]").)[3] First, the body camera video submitted by Officer Abad "clearly depict[s] the events that are central to [Ms. Dixon's] claims." *Johnson*,

---

[3] Plaintiff states that her "response should not be viewed by the Court or by the parties as a waiver of any future challenge to the authenticity of the footage upon further investigation at a later stage." (Doc. 78 at 3.) She does not, however, provide any potential basis for disputing the authenticity of the body camera footage.

107 F.4th at 1301.  Second, Plaintiff does not dispute the authenticity of the body camera footage.  (Doc. 78 at 3.)  As such, the Court will consider the body camera footage when evaluating Plaintiff's claims.  *See Johnson*, 107 F.4th at 1301 (holding that a district court properly considered an officer's body camera and dashcam video in ruling on his motion for judgment on the pleadings).

However, there are several complications regarding the Court's interpretation of the body camera footage.  As an initial matter, the footage depicts a chaotic series of events, and it can be difficult to discern what is happening or being said at some points in the video.  In relevant part, the body camera footage depicts Officers Abad and Delicieux waiting behind a line of police officers dressed in riot gear.  (Abad Body Worn Camera Footage ("Abad BWC"), Exhibit A, Doc. 75 at 21:07:00; Delicieux Body Worn Camera Footage ("Delicieux BWC"), Exhibit B, Doc. 75 at 21:07:00.)[4]  Suddenly, police officers begin shouting "arrest team" and gesturing toward the street in front of the line of officers.  (Abad BWC, Doc. 75 at 21:07:05; Delicieux BWC, Doc. 75 at 21:07:05.)  Then, Officers Abad and Delicieux, along with several other officers, rush past the line of officers in riot gear.  (Abad BWC, Doc. 75 at 21:07:10; Delicieux BWC, Doc. 75 at 21:07:10.)  They proceed to rapidly approach a group of people standing on the street; simultaneously, some officers are shouting at

---

[4] When citing portions of the body worn camera footage, the Court uses the timestamp, denominated in 24-hour time, in the top right corner of the video.

the individuals to "get on the ground." (Abad BWC, Doc. 75 at 21:07:10-21:07:20; Delicieux BWC, Doc. 75 at 21:07:10-21:07:20.) The officers then secure the individuals' hands with zip ties and have them sit on the curb. (Abad BWC, Doc. 75 at 21:07:20-21:08:30; Delicieux BWC, Doc. 75 at 21:07:20-21:08:30.)

While Officer Abad relies on the body camera footage for the proposition that he did not arrest Ms. Dixon, the Court cannot be sure which individual depicted in the video footage is, in fact, Ms. Dixon. Officer Abad represents, in briefing, that Ms. Dixon is "the individual in the red pants, wearing large laboratory googles [sic] and a neck bandana[,]" but he does not cite any allegation in the complaint or evidence in the record to support that statement. (Doc. 76 at 4.) At the pleading stage, where the Court "must construe all ambiguities in the video footage in favor of the plaintiff," *see Baker*, 67 F.4th at 1277, the Court cannot credit Officer Abad's representation made in briefing.

Nevertheless, there is one crucial fact that is established by the officers' body camera footage. The timestamps in the body camera video, which Ms. Dixon does not contest, demonstrate that Officers Abad and Delicieux did not arrest *anyone* until 9:07 PM on June 2, 2020. "[W]here a video is clear and obviously contradicts the plaintiff's alleged facts, we accept the video's depiction instead of the complaint's account . . . and view the facts in the light

depicted by the video." *Baker*, 67 F.4th at 1277-78. Thus, even assuming Officer Abad played some role in arresting Ms. Dixon, the arrest took place after 9:00 PM when the citywide curfew was in effect. As explained below, this fact is dispositive to Ms. Dixon's claim against Officer Abad.

## IV. Officer Abad's Motion for Judgment on the Pleadings

Plaintiff Dixon asserts one count against Officer Abad for false and retaliatory arrest in violation of the First, Fourth, and Fourteenth Amendments to the U.S. Constitution. (Doc. 70 ¶¶ 157-64.) Ms. Dixon alleges that Officer Abad did not have probable cause to arrest her "where Ms. Dixon was attempting to comply with the curfew order, where her arrest took place before 9PM, and/or where her arrest took place after 9PM only as a result of being prevented from complying with the curfew order." (*Id.* ¶ 158.) In addition, Ms. Dixon claims that "where there existed no probable cause to arrest Ms. Dixon and she was arrested while attending and dispersing from a lawful protest, the arrest constituted [a] retaliatory arrest." (*Id.* ¶ 159.)

Officer Abad seeks judgment on the pleadings on three grounds. (Doc. 76.) First, Officer Abad contends that another officer arrested Ms. Dixon. (*Id.* at 6-7.) Second, Officer Abad argues that even if he did arrest Plaintiff, he had arguable probable cause to do so and is therefore entitled to qualified immunity. (*Id.* at 7-10.) Third, Officer Abad asserts that Plaintiff has failed to sufficiently plead that her arrest was retaliatory. (*Id.* at 10-11.) For the

reasons stated below, the Court finds that Officer Abad's second argument based on qualified immunity is dispositive of Plaintiff's false and retaliatory arrest claims, at least as asserted against him.

Qualified immunity "offers complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Grider v. City of Auburn*, 618 F.3d 1240, 1254 (11th Cir. 2010) (quoting *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002)). "The purpose of this immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (internal quotation marks and citations omitted).

To receive qualified immunity, a government official "must initially establish that he was acting within his discretionary authority when the alleged wrongful acts occurred." *Richmond v. Badia*, 47 F.4th 1172, 1179 (11th Cir. 2022). If he does so, "the burden shifts to the plaintiff to establish that qualified immunity is inappropriate." *Id.* The plaintiff must show that: (1) "the official's alleged conduct violated a constitutionally protected right[,]" and (2) "the right was clearly established at the time of the misconduct." *Id.*

Ms. Dixon appears to concede that Officer Abad was acting within his discretionary authority when he allegedly arrested her.[5] In any event, "[a] police officer generally acts within the scope of his discretionary authority when making an arrest." *McDowell v. Gonzalez*, 820 F. App'x 989, 991 (11th Cir. 2020); *see Ferraro*, 284 F.3d at 1194. Accordingly, the Court will conduct a two-part inquiry to assess whether Plaintiff has met her burden to show that qualified immunity is unwarranted. First, the Court "consider[s] whether, taken in the light most favorable to [Plaintiff], the facts alleged show [Officer Abad's] conduct violated a constitutional right." *Perez v. Suszczynski*, 809 F.3d 1213, 1218 (11th Cir. 2016). Second, "[i]f a constitutional right would have been violated under the *plaintiff's* version of the facts," the Court "must then determine 'whether the right was clearly established.'" *Ferraro*, 284 F.3d at 1194 (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled on other grounds by*, *Pearson v. Callahan*, 555 U.S. 223 (2009)).

---

[5] Plaintiff's response to Officer Abad's motion for judgment on the pleadings does not advance any argument challenging the discretionary authority requirement. *See Johns v. CSX Transportation, Inc.*, 210 F. Supp. 3d 1357, 1373 (M.D. Ga. 2016) ("When a non-moving party fails to address particular claims in the moving party's motion for summary judgment but responds to other arguments, the non-moving party abandons these claims."); L.R. 7.1, NDGa ("Failure to file a response shall indicate that there is no opposition to the motion.").

Although Ms. Dixon groups her false arrest and retaliatory arrest claims together in Count II, the claims are analyzed under different constitutional provisions. The Court addresses each in turn.

## A. False Arrest

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Arrests are "seizures" of "persons" and must be reasonable under the circumstances. *District of Columbia v. Wesby*, 583 U.S. 48, 56 (2018). "A warrantless arrest is reasonable if the officer has probable cause to believe that the suspect committed a crime in the officer's presence." *Id.* Probable cause exists when "the facts, considering the totality of the circumstances and viewed from the perspective of a reasonable officer, establish 'a probability or substantial chance of criminal activity.'" *Washington v. Howard*, 25 F.4th 891, 898-99 (11th Cir. 2022) (quoting *Wesby*, 583 U.S. at 57). "Probable cause does not require conclusive evidence and 'is not a high bar.'" *Id.* at 899 (quoting *Wesby*, 583 U.S. at 57).

"While an officer who arrests an individual without probable cause violates the Fourth Amendment, this does not inevitably remove the shield of qualified immunity." *Skop v. City of Atlanta*, 485 F.3d 1130, 1137 (11th Cir. 2007). An officer is not automatically liable for making an arrest that, "when seen with the benefit of hindsight, turns out not to have been supported by

probable cause." *See id.* In the context of § 1983 false arrest claims, "an officer need not have actual probable cause, but only 'arguable' probable cause" to be entitled to qualified immunity. *Garcia v. Casey*, 75 F.4th 1176, 1186 (11th Cir. 2023) (citation omitted). "[A]rguable probable cause exists where 'a reasonable officer, looking at the entire legal landscape at the time of the arrests, could have interpreted the law as permitting the arrests.'" *Edger v. McCabe*, 84 F.4th 1230, 1236-37 (11th Cir. 2023) (quoting *Garcia*, 75 F.4th at 1186). The Eleventh Circuit recently clarified that "the arguable probable cause inquiry in a false arrest case is no different from the clearly established law inquiry[.]" *Garcia*, 75 F.4th at 1187. That is, in the § 1983 false arrest context, "if we conclude that the officers had arguable probable cause then we conclude that their violation of the law was not clearly established and vice-versa." *Edger*, 84 F.4th at 1236. The arguable probable cause standard "recognizes that law enforcement officers may make reasonable but mistaken judgments regarding probable cause but does not shield officers who unreasonably conclude that probable cause exists." *Skop*, 485 F.3d at 1137.

Determining whether an arresting officer has either actual or arguable probable cause to arrest "depends on the elements of the alleged crime and the operative fact pattern." *Edger*, 84 F.4th at 1237 (internal quotations omitted); *Skop*, 485 F.3d at 1137-38. "Probable cause for an arrest may be found if there is probable cause to believe any crime was committed, whether or not there is

probable cause for the crime the arresting officer actually believed had been committed." *Manners v. Cannella*, 891 F.3d 959, 969 (11th Cir. 2018). Probable cause is a "fluid concept" that "deals with probabilities and depends on the totality of the circumstances[.]" *Wesby*, 583 U.S. at 57.

Here, Ms. Dixon's false arrest claim against Officer Abad fails because he had actual probable cause—or at the very least, arguable probable cause—to arrest her. In its decision on Defendants' motions to dismiss the second amended complaint, the Court upheld the lawfulness of the City's curfew order. (Doc. 67 at 7-23.) The curfew order in effect during Ms. Dixon's arrest prohibited any persons from remaining on streets and sidewalks within the City between 9:00 PM and sunrise. Exec. Order 2020-94 at 4.[6] Moreover, Atlanta's municipal code provides that "[a]ny person willfully and knowingly violating any curfew regulations or any other order of the mayor issued under this section shall be deemed guilty of an offense, and upon conviction thereof shall be punished as provided in section 1-8." Atlanta, Ga., Code of Ordinances § 2-181(d). Such a violation can be punished by, *inter alia*, "a fine not exceeding $1,000.00, [or] imprisonment for a term not exceeding six months[.]" *Id.* § 1-8(c)(1). "If an officer has probable cause to believe that an individual has

---

[6] The curfew order is available on the Atlanta City Council's website. *Executive Order 2020-94*, Atlanta City Council, https://citycouncil.atlantaga.gov/home/showpublisheddocument/3691/637266838892170000 (Exec. Order 2020-94).

committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001).

It is undisputed that the body camera footage submitted by Officer Abad demonstrates that he did not arrest anyone until 9:07 PM, after the City's curfew order was in effect. (Abad BWC, Doc. 75 at 21:07:20-21:08:30; Delicieux BWC, Doc. 75 at 21:07:20-21:08:30.) Because Ms. Dixon remained on a public street after 9:00 PM, an act that the City's curfew order prohibited, Officer Abad had probable cause to arrest her for violating the curfew. *See, e.g.*, *Tinius v. Choi*, 77 F.4th 691, 705 (D.C. Cir. 2023), *cert. denied*, 144 S. Ct. 815 (2024) (explaining that plaintiffs' presence in public while an emergency curfew was in effect "confirms that the police had probable cause to arrest Plaintiffs for violating the June 1 Order, under which no person was allowed to 'stand' in any 'public place within the District' after 7:00 P.M. on June 1"); *Luong v. House*, 669 F. Supp. 3d 735, 750-51 (S.D. Iowa 2023) ("[T]he record clearly shows that Defendants personally observed Plaintiffs violating the Curfew Order in their presence. Accordingly, Defendants had probable cause to arrest Plaintiffs for a curfew violation."); *Jeffery v. City of New York*, No. 20-CV-2843 (NGG) (RML), 2022 WL 204233, at *7 (E.D.N.Y. Jan. 24, 2022), *aff'd*, 113 F.4th 176 (2d Cir. 2024) (finding that officers had probable cause to arrest New York residents who were out in public during an emergency curfew).

Ms. Dixon contends that, even if she was arrested while the curfew was in effect, her allegations raise the plausible inference that Officer Abad did not have probable cause to arrest her. (Doc. 78 at 5-8.) Specifically, Ms. Dixon emphasizes that the code provision addressing curfew offenses only prohibits "willful[ ] and knowing[ ]" violations of curfew regulations. (*Id.* at 6.) According to Ms. Dixon, she was prevented from complying with the curfew because police blocked the exits from the area in which she was protesting, and therefore, she did not "willfully" violate the curfew. (*Id.* at 7; *see* Doc. 70 ¶¶ 46-49; 158.) Ms. Dixon contends that if Officer Abad knew that she, like many others, were prevented from complying with the curfew order, he would have lacked probable cause to arrest her. (*Id.* at 7.)

Even accepting Ms. Dixon's allegation that she did not willfully violate the curfew order, however, her argument imposes too high of a burden for probable cause. As explained above, "[p]robable cause does not require conclusive evidence and 'is not a high bar.'" *Howard*, 25 F.4th at 899 (quoting *Wesby*, 583 U.S. at 57). Indeed, even "innocent behavior frequently will provide the basis for a showing of probable cause." *Gates v. Khokhar*, 884 F.3d 1290, 1298 (11th Cir. 2018) (quoting *Illinois v. Gates*, 462 U.S. 213, 243 n.13 (1983)). An officer in the field cannot be expected to make fine-grained judgments about the extent to which an individual might have been prevented from complying with a curfew order and whether that might excuse actions that otherwise

18

contravene the curfew. *See Penley v. Eslinger*, 605 F.3d 843, 854 (11th Cir. 2010) ("We are loath to second-guess the decisions made by police officers in the field." (cleaned up)). Moreover, though Ms. Dixon alleges that she was stopped from complying with the curfew order by "police cordons," she does not allege that Officer Abad *himself* took any action that prevented her compliance.

Under the circumstances here, where Officer Abad observed Ms. Dixon on the street while the curfew was in effect, he had probable cause—or at minimum, arguable probable cause—to arrest Ms. Dixon. Accordingly, Officer Abad is entitled to qualified immunity with respect to Ms. Dixon's Fourth Amendment false arrest claim.

### B. Retaliatory Arrest

Ms. Dixon's retaliatory arrest claim fares no better for much the same reason. The First Amendment provides that "Congress shall make no law . . . abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble." U.S. Const. amend. I. "It is well-established that peaceful protest is an expressive activity that constitutes protected 'speech' under the First Amendment." *Ratlieff v. City of Fort Lauderdale*, 748 F. Supp. 3d 1202, 1244 (S.D. Fla. 2024) (citing *U.S. v. Grace*, 461 U.S. 171, 176 (1983)). Moreover, demonstrators have "a constitutional right to engage in peaceful protest on public land." *Amnesty Int'l v. Battle*, 559 F.3d 1170, 1182 (11th Cir. 2009); *Keating v. City of Miami*, 598 F.3d 753, 766 (11th Cir. 2010) (holding

that individuals have "a clearly established right to assemble, protest, and demonstrate peacefully"). "Governments may not prevent protests, punish the exercise of the right to protest peacefully by arresting the demonstrators, nor unduly burden the right by forcing demonstrators to undergo excessive searches." *Amnesty Int'l*, 559 F.3d at 1182.

The First Amendment "protects not only the affirmative right to speak, but also the right to be free from retaliation by a public official for the exercise of that right." *Echols v. Lawton*, 913 F.3d 1313, 1320 (11th Cir. 2019) (quotation marks omitted). To prevail on a claim for First Amendment retaliation, a plaintiff must show that (1) she engaged in protected speech, (2) the official's conduct adversely affected the protected speech, and (3) a causal connection existed between the speech and the official's retaliatory conduct. *Id.*

To demonstrate a causal connection between speech and a retaliatory arrest, a plaintiff "must plead and prove the absence of probable cause for the arrest." *Nieves v. Bartlett*, 587 U.S. 391, 402 (2019). "[B]ecause probable cause speaks to the objective reasonableness of an arrest, its absence will—as in retaliatory prosecution cases—generally provide weighty evidence that the officer's animus caused the arrest, whereas the presence of probable cause will suggest the opposite." *Id.* (citation omitted). Thus, "[t]he presence of probable cause should generally defeat a First Amendment retaliatory arrest claim." *Id.*

at 405. A "narrow qualification" to this rule arises "where officers have probable cause to make arrests, but typically exercise their discretion not to do so." *Id.* at 406.

Ms. Dixon has adequately alleged that she was engaged in protected speech and that her arrest adversely affected her speech. However, as discussed above, the body camera footage submitted by Officer Abad demonstrates that he observed her on a public street while the City's curfew order was in effect. Officer Abad thus had probable cause to arrest Ms. Dixon, which severs any potential inference that she was arrested *because of* her protected speech, rather than for violating the curfew order. Moreover, Ms. Dixon does not allege facts consistent with the narrow exception set forth in *Nieves*. That is, she does not allege that she "was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." *Nieves*, 587 U.S. at 407. Accordingly, Officer Abad is also entitled to qualified immunity on Ms. Dixon's retaliatory arrest claim. *See, e.g.*, *Rickerson v. Jeter*, No. 21-12563, 2022 WL 2136017, at *4 (11th Cir. June 14, 2022) (explaining that unless the *Nieves* exception applies, "arguable probable cause gives an officer qualified immunity from a First Amendment claim for retaliatory arrest").

In sum, the existence of probable cause—or at least, arguable probable cause—to arrest Ms. Dixon for violating the City's curfew order defeats both

her false arrest and retaliatory arrest claims against Office Abad.  The Court therefore grants Officer Abad's motion for judgment on the pleadings and dismisses Officer Abad from this case.

## V.     Ms. Dixon's Motion for Default Judgment Against Officer Delicieux

On November 18, 2024, Ms. Dixon moved for the entry of default against Officer Delicieux based on his failure to respond to this case.  (Doc. 71.)  Shortly thereafter, on December 6, 2024, the Clerk of Court entered default against Officer Delicieux.  Ms. Dixon has now filed a motion for default judgment with respect to her excessive force claim against Officer Delicieux.  (Doc. 80.)

"Generally, the entry of default judgment is committed to the discretion of the district judge."  *Mason v. Lister*, 562 F.2d 343, 345 (5th Cir. 1977); *see D'Onofrio v. Il Mattino*, 430 F. Supp. 2d 431, 437 (E.D. Pa. 2006) ("Entry of default judgment is not a matter of right that flows automatically from a defendant's failure to respond to the complaint, but rather a matter of the court's discretion."  (citation omitted)); *Georgia Power Project v. Georgia Power Co.*, 409 F. Supp. 332, 336 (N.D. Ga. 1975) ("The grant or denial of a motion for entry of a default judgment lies within the sound discretion of the trial court."). In this Circuit, "there is a strong policy of determining cases on their merits and we therefore view defaults with disfavor."  *In re Worldwide Web Sys., Inc.*, 328 F.3d 1291, 1295 (11th Cir. 2003).  Where, as here, a plaintiff applies to the

Court for a default judgment, the Court "may conduct hearings or make referrals . . . when, to enter or effectuate judgment, it needs to[,]" *inter alia*, "(B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter." Fed. R. Civ. P. 55(b)(2).

Ms. Dixon contends that the Court should enter default judgment on her excessive force claim against Officer Delicieux based on the allegations in her third amended complaint. (Doc. 80 at 2-3.) Specifically, Ms. Dixon alleges that she attempted to disperse from the area where she was protesting "by exiting through a construction site located at or near 155 Centennial Olympic Parkway." (Doc. 70 ¶ 48.) Ms. Dixon claims that Officer "Delicieux followed [her] and several other demonstrators who were with her into the construction site." (*Id.* ¶ 50.) According to Ms. Dixon, Officer "Delicieux unholstered a firearm and pointed his weapon at Ms. Dixon and the other demonstrators." (*Id.* ¶ 51.) Ms. Dixon pleads that "[a]t all times, [she] and all others present were compliant and no circumstances existed for the lawful use or threatened use of an officer's firearm." (*Id.* ¶ 53.) Ms. Dixon asserts that she was forced out of the construction site "[at] gunpoint," and that Officer "Delicieux told [her] that she would not be arrested if she left the construction site." (*Id.* ¶ 55.) After exiting the construction site, Ms. Dixon alleges, she was arrested by Officers Delicieux and Abad. (*Id.* ¶ 57.)

Although ordinarily "a defaulted defendant is deemed to admit the plaintiff's well-pleaded allegations of fact," *Surtain*, 789 F.3d at 1245 (internal quotations omitted), there is a complication in this case. Namely, Officer Delicieux's body camera footage appears to contradict Ms. Dixon's account of his actions. In particular, the footage simply does not depict Officer Delicieux following any protestors into a construction site and holding them at gunpoint. Instead, when the body camera video begins, at 8:48 PM, it shows Officer Delicieux moving among a large group of police officers and what appear to be members of the National Guard. (Delicieux BWC, Exhibit B, Doc. 75 at 20:48:25.) Eventually, Officer Delicieux finds himself standing behind a line of police officers dressed in riot gear. (*Id.* at 21:07:00.) Then, only *after* a group of protestors *emerge from a construction site*, Officer Delicieux and other officers approach the group and arrest them. (*Id.* at 21:07:05-21:08:30.) At least within the visible frame of the body camera, the footage does not show Officer Delicieux unholstering his firearm or pointing it at anyone.

Moreover, when Officer Delicieux approaches the group of protestors, one of the protestors can be repeatedly heard shouting "he gave us a freebie." (*Id.* at 21:07:15-21:08:30.) The protestor explains to Officer Abad that "your friend, the person that is dressed just like you . . . he said this is your freebie, go ahead and go." (Abad BWC, Exhibit A, Doc. 75 at 21:08:30-21:08:50.) Another protestor suggests that this officer "let us out[,]" presumably referring

to the construction site.  (*Id.* at 21:08:35-21:08:45.)  These statements appear to suggest that the group of protestors encountered *another* officer in the construction site that was neither Officer Delicieux nor Officer Abad.  As such, the body camera footage raises questions about whether Ms. Dixon's allegations mistakenly attribute another officer's actions to Officer Delicieux, who is not shown entering any construction site.

Given the discrepancies between Officer Delicieux's body camera footage and Ms. Dixon's allegations regarding her excessive force claim, the Court exercises its discretion under Rule 55(b)(2) to conduct a hearing to "establish the truth of any allegation by evidence" and/or "investigate any other matter." Fed. R. Civ. P. 55(b)(2).  The Court will therefore defer consideration of Plaintiff's motion for default judgment pending an evidentiary hearing.  The evidentiary hearing is set for October 20, 2025, at 10:00 AM in Courtroom 2307.

## VI. Conclusion

Defendant Abad's motion for judgment on the pleadings (Doc. 76) is **GRANTED**. Defendant Abad is **DISMISSED FROM THE CASE**.

Plaintiff's motion for default judgment against Defendant Delicieux (Doc. 80) is **DEFERRED AND STAYED** pending the evidentiary hearing. The evidentiary hearing is set for October 20, 2025, at 10:00 AM in Courtroom 2307.

**SO ORDERED**, this 29th day of September, 2025.

SARAH E. GERAGHTY
United States District Judge